[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 466 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 467 
One of the grounds upon which the defendants based their motion for a nonsuit was, that the action did not survive and could not be maintained against the personal representatives of Harry Hayt. The rule at common law was that actions for torts died with the person, and could not be maintained by the personal representatives of the injured party, or against those of the wrong-doer. The statute has changed the law so far as property or relative rights are affected by the wrongful act. The Revised Statutes (vol. 2, 448, § 1) provide that for wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrong-doer, such action may be brought by the person injured, or, after his death, by his executors or administrators against such wrong-doer, and after his death, against his executors or administrators, in the same manner and with the like effect, in all respects, as actions founded upon contracts. Section 2 provides that the preceding section shall not extend to actions for slander, for libel, or to actions for assault and battery or false imprisonment, nor to actions on the case for personal injuries to the person of the plaintiff or to the person *Page 468 
of the testator or intestate of any executor or administrator. The exceptions contained in the 2d section manifest the intention of the Legislature that all other actions founded upon tort should survive.
Another ground upon which the nonsuit was asked, was that the plaintiffs were informed of Delavan's claim at the time of the purchase, or at least that they had sufficient notice to put them upon inquiry, and that they, therefore, purchased at their own risk. The only information possessed by the plaintiffs were the statements made by Hayt and Delavan at the time of the purchase. A party making fraudulent representations upon a sale of property by him, cannot defend himself, as matter of law, upon the ground that a bystander stated the real facts. The purchaser may rely upon the statements of the vendor; and whether he does so rely and is thereby induced to purchase is a question for the jury. It did not appear that the plaintiffs had any other means of ascertaining the truth than the statements made by Hayt and Delavan at the time of the purchase. They were not, therefore, guilty of any negligence in not ascertaining the facts.
The remaining ground for the nonsuit necessary to notice is that Hayt's representations amounted to the expression of a mere opinion. They were much more than this. His assertions, among others, were that Delavan had no mortgage; that he had no claim; that he came as a scarecrow to injure the sale of the farm. This is no opinion, but a positive assertion that Delavan had no claim.
The conversation between the plaintiffs and Harry Hayt, immediately after the farm was struck off and before any writings were made, was properly received in evidence. The sale was not judicial, and was, therefore, within the statute of frauds. The sale was not complete until the writings were executed. Any false and fraudulent representations, made by Hayt with a view to induce the plaintiffs to go on and consummate the bargain, were proper evidence.
There was no error in receiving in evidence the proceedings and judgment in the action prosecuted by Delavan against the *Page 469 
plaintiffs and Harry Hayt to enforce his mortgage. The judgment in that action was admissible to show the validity and amount of Delavan's mortgage. The defendants' testator was a party to that suit, and, therefore, concluded by the judgment. The papers necessary to constitute the judgment roll had all been filed, and the neglect of the clerk to attach them together could not affect the plaintiffs' right to use them as evidence. The judgment was regular, and the papers might have been attached upon the trial, and thus met the formal objection. The neglect to do it did not injure the defendants, or in any way affect their rights.
The question whether Hayt had any agency in preventing Delavan's demand being provided for in the assignment, according to the agreement upon which he gave up the mortgage, was not material. The true inquiry, was whether Delavan, at the time of the sale, had a valid mortgage upon the farm, and whether Harry Hayt knew it; and whether, knowing this, he, with a view to deceive and defraud the plaintiffs, denied the existence of any such claim; and whether the plaintiffs, confiding in his representations, were thereby induced to purchase the farm, believing that there was no such claim. By what means the debt of Delavan failed to be provided for in the assignment and satisfied from the proceeds of the assigned property, did not affect any of the issues upon trial.
The defendants' counsel requested the court to charge the jury that if they came to the conclusion that Harry Hayt, at the time of the bidding in the presence of Beverly Haight, the purchaser, publicly refused to warrant the title to the premises sold, as against Delavan's mortgage or claim, that the purchaser is deemed to have purchased at his own risk, and the action could not be maintained. The court declined so to charge, to which the defendants' counsel excepted. Upon what principle the refusal of Hayt to warrant against the claim of Delavan, the existence of which he denied, is to protect him, if the denial was made with a design to deceive and defraud the purchasers, is not perceived. The fact that he was acting as trustee and had no personal interest can make no difference in a legal *Page 470 
view. The action is to recover for the injury sustained by the plaintiffs from the fraud of Hayt. The injury to the plaintiffs and the wrong done by Hayt was the same, whoever received the fruits. In Culver v. Avery (7 Wend., 380) it was held that an action lay against a public officer for deceit practised by him in making a sale of land officially. In that case the defendant was one of the commissioners of loans, and in that capacity sold the land, and he was held liable for fraudulent representations in regard to the title. The refusal of Hayt to warrant against the claim, did not prove that the plaintiffs knew of or believed that it existed. The question was whether they were deceived by Hayt's representations. If they believed that Delavan's claim was valid, they were not deceived and could not recover. The refusal of Hayt to warrant was proper evidence for the consideration of the jury upon this point, but did not constitute a legal bar to the action.
The defendants' counsel excepted to the refusal of the court to charge the jury that if they came to the conclusion, from the evidence, that Harry Hayt believed at the time of the sale that the mortgage of Delavan was given up and canceled, and was no longer an available security in Delavan's hands at the time of said sale, then there was no sufficient evidence of fraud or deceit on the part of Harry Hayt, and they should find for the defendants. There was no evidence upon the trial that Hayt believed that the mortgage had been given up and canceled. The proof showed that he knew the terms upon which Delavan handed it to Pudney, and that he also knew that those terms had not been complied with. The lien of the mortgage was not discharged by the transaction, and the request amounts to nothing more than calling upon the jury to conjecture whether Hayt was ignorant of the law, and really believed that such a transaction would cancel the mortgage. The judge did charge the jury that they must ascertain whether Harry Hayt was guilty of fraud and false representations, and if his conduct was not calculated to mislead and deceive the plaintiffs and induce them, under such representations, to part with their money and purchase the property; that if the jury found such *Page 471 
representations were false and made with a design to deceive them, the action was made out and the plaintiffs were entitled to recover. This portion of the charge gave the true rule to the jury. By it I understand they were directed to ascertain whether the representations were false and made with a view to deceive and defraud the purchasers, and if so, whether the plaintiffs were thereby induced to purchase the property: in which case the action was made out.
The judge charged that the rule of damages, if the plaintiffs were entitled to recover, was the difference in the value of the farm as it was represented to be and as it really was, and that was the amount of the mortgage, with the interest and costs; to which the defendants excepted. The exception is too general to raise the question whether the plaintiffs were entitled to recover the costs of the Delavan foreclosure suit. In all other respects the rule laid down by the judge was clearly right, and I think under, the facts of the case, he was right as to the costs of that suit. No question was made upon the argument in this court but that fraud and deceit upon the sale of real estate will support an action by the party injured. The law may be considered as settled upon this point, in this State. (Culver v. Avery,
7 Wend., 380; Ward v. Wiman, 17 Wend., 196; Whitney v.Allaire, 1 Comst., 305, and cases therein referred to.) There is no reason why the same rules should not prevail in this respect in regard to real, as obtain in sales of personal property. The judgment should be affirmed.