ELIZA HEGERICH, as Administratrix, etc., Respondent, *v.* JOHN KEDDIE, as Executor, etc., Appellant.

The cause of action given by the statute (Chap. 450, Laws of 1847; Code of Civ. Pro., § 1902) to the representatives of a decedent, whose death was caused by the negligence of another, abates upon the death of the wrong-doer, and an action cannot be maintained against his representatives.

*Yertore* v. *Wiswall* (16 How. Pr. 8), overruled.

*Needham* v. *G. T. R. R. Co.* (38 Vt. 294), distinguished.

The history of the statutory modifications in this State of the rule of the common law as to the survivability of actions given, and the authorities upon the subject collated.

*Hegerich* v. *Keddie* (32 Hun, 141), reversed.

(Argued April 22, 1885; decided June 9, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made March 7, 1884, which reversed a judgment in favor of defendant, entered upon an order sustaining a demurrer to plaintiff's complaint. (Reported below, 32 Hun, 141.)

This action was brought by plaintiff, as administratrix, to recover damages for the death of her intestate, which, the complaint alleged, was caused by the negligence of defendant's testator. Defendant demurred, claiming that the cause of action did not survive.

*John L. Lindsay* for appellant. At the common law all causes *ex delicto* for damages abated by the death of either party. This rule embraced injuries to the person, to personal property, and to real estate. (1 Wms. on Exrs. [8th Eng. ed.] 796; *Pulver* v. *Harris*, 52 N. Y. 76; *Baker* v. *Bolton*, 1 Campb. Nisi Prius, 493; *Cregin* v. *Crosstown R. R.* 83 N. Y. 595; 1 Ch. Pl. 79.) Causes *ex delicto*, unless expressly permitted by statute, will not survive (even though a statute gives an action of *assumpsit* against the guilty party). (*People* v. *Gibbs*, 9 Wend. 29; *Franklin* v. *Low*, 1 Johns. 403;

*Wade* v. *Kalbfleisch,* 58 N. Y. 283 ; *Hopkins* v. *Adam,* 5 Abb. Pr. 353 ; *Hodgman* v. *Western R. R. Co.,* 7 How. Pr. 494.) This action (under § 1902), being yet classed among "personal torts" by section 3342 of the Code, and for the other foregoing reasons, died like other actions for personal injuries, with the person causing the injuries. (*Meech* v. *Stones,* 19 N. Y. 29 ; *Fried* v. *N. Y. C. R. R. Co.,* 25 How. 287 ; *Butler* v. *N. Y. & E. R. R. Co.,* 22 Barb. 110 ; *Chamberlain* v. *Williamson,* 2 Maule & S. 408 ; *Graves* v. *Spear,* 58 Barb. 385 ; 3 Hun, 682 ; 54 How. 213 ; *Bk. Cal.* v. *Collins,* 5 Hun, 209 ; *Price* v. *Price,* 11 id. 299 ; *Haight* v. *Hyatt,* 19 N. Y. 464 ; *Bond* v. *Smith,* 4 Hun, 19.)

*Geo. V. N. Baldwin* for respondent. This action is entirely statutory, and is not dependent upon common-law rules. (2 R. S. 447, §§ 1, 2 ; *Haight* v. *Hayt,* 19 N. Y. 464 ; *Whitford* v. *Panama R. R. Co.,* 23 id. 465 ; *McDonald* v. *Mallory,* 77 id. 546 ; *Yertore* v. *Wiswall,* 16 How. Pr. 8 ; Code of Civ. Pro., § 1902 ; *Blake* v. *M. R. R. Co.,* 18 Ad. & El. [N. S.] 93.) The nature of the action thus given by the original statute and re-enacted and strengthened by the Code proves it to be one of those that survive. (*Quinn* v. *Moore,* 15 N. Y. 432 ; *Needham* v. *G. T. R. R. Co.,* 38 Vt. 294.)

Ruger, Ch. J. A brief reference to some of the elementary principles, applying to civil actions will serve the purpose, at least, of defining the terms used, and the modifications introduced, into the law by the statutes hereinafter referred to. Such actions were primarily divided into two classes, distinguished as actions *ex contractu* and *ex delicto.* The actions known as detinue, trespass, trespass on the case, and replevin were those used in causes of action arising from torts, and were described as actions *ex delicto.* Trespass on the case was the appropriate form of remedy for all injuries to person or property which did not fall within the compass of the other forms of action. (3 Stephens' Com. 449.) At common law, originally, all actions arising *ex delicto* died with the person by whom or

to whom the wrong was done. Thus, when the action was founded on any malfeasance, or misfeasance, was a tort, or arose *ex delicto*, such as trespass for taking goods, etc., trover, false imprisonment, assault and battery, slander, deceit, diverting a water-course, obstructing lights, escape, and many other cases of the like kind, where the declaration imputes a tort done either to the person or property of another, and the plea must be "not guilty," the rule was "*actio personalis moritur cum persona.*" (1 Wms. on Exrs. 668.) It was, however, held in *Hambly* v. *Trott* (Cowp. 371), Lord MANSFIELD delivering the opinion, that, "if it is a sort of injury by which the offender acquires no gain to himself at the expense of the sufferer, as beating or imprisoning a man, etc., then the person injured has only a reparation for the *delictum*, in damages to be assessed by a jury. But, when, besides the crime, property is acquired which benefits the testator, then an action for the value of the property shall survive against the executor." "So far as the tort itself goes, an executor shall not be liable, and therefore it is that all public and private crimes die with the offender, and the executor is not chargeable; but so far as the act of the offender is beneficial, his assets ought to be answerable, and his executor, therefore, shall be charged." By the statute of 4th Edward III, chapter 7, actions "*de bonis asportatis*" were given to the executors of a deceased person for personal property taken from their testator and carried away, but for all other causes of action arising out of wrongs done either to the person or property the rule of "*actio personalis moritur cum persona*" applied. (1 Wms. on Exrs. 672.) Under the clause of the Constitution making the rules of the common law the law of the State, it must be held that these rules still determine the survivability of actions for torts, except where the law has been specially modified or changed by statute.

It had been held in this State prior to the enactment of the Revised Statutes that an action against the representatives of a postmaster for money feloniously abstracted from a letter by his clerk (*Franklin* v. *Low*, 1 Johns. 402), and against a sheriff's representatives for an escape occurring during his

life-time (*Martin* v. *Bradley*, 1 Caines, 124), did not lie against such representatives. In the case of *People* v. *Gibbs* (9 Wend. 29), decided in 1832, it was held that an action against the executors of a sheriff for the default of his deputy in returning process, notwithstanding an action in *assumpsit* for money had and received was by statute authorized therefor, did not lie, inasmuch as the cause of action was founded in tort.

As no reference is made in this case to the Revised Statutes, it is inferred that it arose previous to their enactment, although the case does not disclose that fact. Still the date of the trial, November, 1830, would not necessarily lead to such an inference. The Revised Laws (Vol. 1, p. 311) had theretofore enlarged the scope of the statute of 4th Edward III, and provided for actions by and against executors and administrators for property taken and converted by the testator or intestate during his life-time. Under this condition of the law the provisions of the Revised Statutes were enacted in 1828, and contain the rule by which this controversy must be determined. Section 1 reads as follows: " For wrongs done to the property rights or interests of another for which an action might be maintained against the wrong-doer, such action may be brought *by the person injured*, or after his death by his executors or administrators against such wrong-doer, and after his death, against his executors or administrators in the same manner and with the like effect in all respects as actions founded upon contract." Section 2. " But the preceding section shall not extend to actions for slander, for libel, or to actions of assault and battery or false imprisonment, nor to actions on the case for injuries to the person of the plaintiff or to the person of the testator or intestate of any executor or administrator." It cannot be successfully claimed that the language, " actions on the case for injuries to the person " up to this time did not include, according to universal classification, all actions without regard to the person or persons to whom they accrued, which had as their cause, or were founded upon injuries to the person of another arising from the negligent or careless conduct of a

wrong-doer. It must also, upon well-settled principles of construction, be conceded that these terms were used according to their legal and well-understood signification at the time of their employment. If the language of the statute applicable to this case be collocated and read according to its plain meaning and intent, the following sentence would seem to be the result : Actions by and against executors and administrators for wrongs done to the property rights, or interests of their intestate or testator are hereby authorized, but so far as such wrongs have heretofore been remediable by actions on the case for injuries to the person of the plaintiff, or to the person of the intestate or testator of any executor or administrator, they shall not survive the death of the person to whom or by whom the wrong is done. The wrongs referred to in these sections are such only as are committed upon the "property rights, or interests" of the testator or intestate, and to a cause of action for which the executors and administrators acquire a derivative title alone. The whole scope and design of the statute is to extend a remedy already accrued, to the representatives of a deceased party, and provide for the survival only of an existing cause of action.

Among the questions which have arisen over the construction of these sections the most prominent are probably those relating to the signification of the words "property rights or interests," as used in the first section, and the effect of the enumeration in the second section, of certain specific actions as being excepted from the operation of the prior section. It is inferable from the opinions expressed in *Haight* v. *Hayt* (19 N. Y. 464), that the court there supposed that the words "property rights or interests," as used in the statute, covered and included all injuries tortiously inflicted by one person to the detriment of another, whether affecting his person or property, and also that the mention of certain actions in the second section manifested an intention on the part of the law-makers to exempt all others, founded on tort from abatement by death. The views expressed on those questions seem to have been unnecessary, as the action there, was for a fraudu-

lent representation with respect to incumbrances, whereby a purchaser of land at a public sale was induced, and the purchaser was compelled to pay an incumbrance which he was led to believe did not exist. The injury thus seems clearly to have been one to rights of property alone and was saved from abatement by the first section of the statute. The language and structure of these sections would seem to repel the idea that the exemptions provided by the second section were intended to authorize the survival of all other actions for torts. In the view implied by the language used in that case the first section would be quite unnecessary, as any provision specifying the classes of action which did survive would be superfluous if conjoined with one enumerating all actions not surviving. Such a construction gives the first section no office to perform, and the courts have practically rejected this interpretation in numerous cases, holding that causes of action abated by death which were not named in the second section. Thus it has been held that a cause of action by a master for the seduction of his servant does not survive (*People, ex rel.* v. *Tioga Com. Pleas,* 19 Wend. 73) ; or for a fraudulent representation by a third person in reliance upon which credit is given to an irresponsible person (*Zabriskie* v. *Smith,* 13 N. Y. 322); or for a breach of a promise to marry (*Wade* v. *Kalbfleisch,* 58 id. 286); or for damages occasioned by the negligent killing of another (*Whitford* v. *Panama R. R. Co.,* 23 id. 465); or for a penalty incurred by trustees under the General Manufacturing Act (*Stokes* v. *Stickney,* 96 id. 323) ; and for fraud in inducing one to marry another (*Price* v. *Price,* 75 id. 244).

The statute obviously created a great change in the law and applied to a numerous class of cases which had not before been held to survive. Thus it enlarged the rights created by the act of 4 Edward III, so as to include actions for trespass *de bonis asportatis* against representatives as well as by them, and removed the limitation which authorized other actions for wrongs against representatives only when the estate of their testator or intestate was benefited by the act complained of. The change is illustrated by the case of *Benja-*

*min's Ex'rs* v. *Smith* (17 Wend. 208), where it was held that the cause of action accruing to a party against a sheriff for a false return did not abate by the plaintiff's death. This had previously been held otherwise. (*People* v. *Gibbs, supra.*) In *People* v. *Tioga Com. Pleas* (19 Wend. 73), it was held that such actions alone as survived to executors and administrators were assignable, and that a cause of action by a master for the seduction of his servant was not assignable.

Although this action is based upon the theory of a loss of service by the master, it must inferentially have been determined that it did not affect the property rights or interests of the master, in such manner as to cause the right of action to survive. GROVER, J., in *Haight* v. *Hayt,* said "that the statute had changed the law so far as property or relative rights are affected by the wrongful act." Judge RAPALLO has said that "the rights and interests for tortious injuries to which this statute preserves the right of action have frequently been considered, and it is generally conceded that they must be pecuniary rights or interests by injuries to which the estate of the deceased is diminished." (*Cregin* v. *B. C. R. R. Co.,* 75 N. Y. 194.)

Reference to the law as it stood previous to the revision (and the application of the rule of construction embodied in the maxim of *noscitur a sociis*) would seem to require such an interpretation of the words "property rights or interests" as will confine their application to injuries to property rights only, and such as were theretofore enforceable by the deceased. It is stated in 1 Wms. on Exrs. 677, "that no action is maintainable by the executor or administrator upon an implied or express promise to the deceased when the damage consisted entirely in the personal suffering of the deceased without any injury to his personal estate." *Chamberlain* v. *Williamson* (2 M. & S. 408) is cited in support of this proposition. In that case Lord ELLENBOROUGH said: "Executors and administrators are the representatives of the personal property, that is the debts and goods of the deceased; but not of their wrongs except when those wrongs operate to the temporal

injury of their personal estate." Accordingly it was there held "that an executor or administrator cannot have an action for a breach of promise of marriage to the deceased when no special damage to the personal estate can be stated on the record. So with respect to injuries affecting the life and health of the deceased, all such as arise out of the unskillfulness of medical practitioners, the imprisonment of the party brought on by the negligence of his attorney, such cases being in substance actions for injuries to the person."

This view of the law was approved in a similar case in this court. (*Wade* v. *Kalbfleisch, supra.*) It was said in *People* v. *Tioga Com. Pleas* (*supra*), by COWEN, J., that "the cases in respect to executors and insolvent assignees, and the like, certainly go very far to direct what we are to consider matter of property or estate, so far that it can be touched by a contract, and made a subject of transfer between parties in any way at law or in equity; if the right be not so entirely personal that a man cannot by any contract place it beyond his control, it is assignable under the statutes of insolvency, or will, on his death, pass to his executors. The reason is because it makes a part of his estate; it is matter of property, and as such it is in its nature assignable. On the contrary, if it be strictly personal, it is beyond the reach of contract. In the same sense we say of many rights they are inalienable. No one would pretend that a man's person could be specifically affected by contract; though he should bind himself by indenture, equity could not enforce the agreement. (*Mary Clark's Case*, 1 Blackf. 122.) So of a man's absolute personal rights in general, as his claim to safety from violence, and his relative rights as a husband, a father, a master, a trustee, etc." This case was approved in *McKee* v. *Judd* (12 N. Y. 622), and it was there said by GROVER, J., that "demands arising from injuries strictly personal, whether arising upon tort or contract, are not assignable; but that all others are." In *Green* v. *Hudson R. R. R. Co.* (28 Barb. 9) approved in *Whitford* v. *Panama R. R.* (*supra*), it was held that the husband at common law could not maintain an action for negligence causing the death of his wife;

and that continued to be the law in this State until the act of 1847 was amended by chapter 78 of the Laws of 1870. It was said by Judge DENIO in *Whitford* v. *Panama R. R. Co.* (*supra*), "It has never been suggested, so far as I know, that the personal representatives of a deceased person could at the common law sustain an action on account of the wrongful act of another, which caused the death of the person whose estate they represent." It would seem unnecessary to cite additional authorities to the effect that as the law stood at the adoption of the statute, neither a husband nor wife had such an interest in the life of their respective consorts as subjected a person, through whose negligent act it was taken, to the charge of injuring any property rights possessed by them.

From the same review, it is quite evident that the authors of the statute, intended explicitly to provide for the abatement of causes of action for personal injuries occurring to the plaintiff, or to his intestate or testator. The assignability and survivability of things in action have frequently been held to be convertible terms, and perhaps furnish as clear and intelligible a rule to determine what injuries to property rights or interests are meant by the statute, as it is possible to lay down. (*People* v. *Tioga Co. Com. Pleas, supra ; Zabriskie* v. *Smith, supra.*)

The rights of property only which are in their nature assignable and capable of enjoyment by an assignee are those referred to in the statute. Such rights as arise out of the domestic relations clearly do not possess the attributes of property, and are not assignable by the possessor. (Id.)

The provisions of the Revised Statutes were; however, modified by chapter 450 of the Laws of 1847, as amended by subsequent statutes, giving an action against persons and corporations, to the representatives of a deceased person, for the benefit of the husband or widow and next of kin, to recover damages for the pecuniary injuries suffered by them where death was caused by the wrongful act, neglect or default of another, and the act, neglect or default was such as would (if death had not ensued) have entitled the party injured to maintain an action therefor, and in respect thereof against the per-

son who or the corporation which caused the same, although the death was caused under such circumstances as in law amounted to a felony.

We are now to consider the effect which these statutes produced upon the law as it previously existed. The cause of action here provided for has been held not to be a devolution, but a new one calling for the application of another rule of damage and distinguished by many other attributes. (*Whitford* v. *Panama R. R. Co., supra ; Haight* v. *Hayt,* 19 N. Y. 464; *McDonald* v. *Mallory,* 77 id. 546 ; *Littlewood* v. *Mayor, etc.,* 89 id. 24 ; *Blake* v. *Midland R. R. Co.,* 18 A. & E. 93 ; *Leggott* v. *Gt. N. R'y Co.,* L. R., 1 Q. B. D. 604 ; *Russell* v. *Sunbury,* 37 Ohio St. 372 ; *Yertore* v. *Wiswall,* 16 How. Pr. 8.) That it is founded upon the wrongful act of the party causing the death, and gives a right of action therefor to the representatives of the deceased, for the pecuniary consequences suffered by the husband, wife or next of kin from such wrongful act, is also established by the same authorities.

The cause of action is obviously the wrongful act, and the pecuniary injuries resulting afford simply a rule to determine the measure of damages. However much the husband, widow or next of kin may suffer pecuniarily by the act causing death it constitutes no cause of action, independent of evidence, that it was occasioned by the wrongful or negligent conduct of another. Proof that it occurred in consequence of the contributory negligence of the deceased person, or without the fault of the defendant, furnishes a perfect answer to such an action and a conclusive reason why the death produced by the wrongful act is the cause of action. The cause of action here provided for does not purport to be in any respect a derivative one, but is an original right conferred by the statute. upon representatives for the benefit of beneficiaries, but founded upon a wrong already actionable by existing law in favor of the party injured, for his damages. The description of the actionable cause, seems to have been inserted merely to characterize the nature of the act which is intended by the statute to be made actionable, and to define the kind and degree of delinquency with

which the defendant must be chargeable in order to subject him to the action. ( *Whitford* v. *Panama R. R. Co., supra.*)

It will be observed also that the statute, although creating a new cause of action, and passed for the express purpose of changing the rule of the common law in respect to the survivability of actions, and conferring a right upon representatives which they did not before possess, does not undertake, either expressly or impliedly, to impair the equally stringent rule which precluded the maintenance of such actions against the representatives of the offending party.

The plain implication from its language would, therefore, seem to be at war with the idea that the legislature intended to create a cause of action enforceable against, as well as by representatives. The cause of action thereby given is not to the estate of the deceased person, but to his or her representatives as trustees, not for purposes of general administration, but for the exclusive use of specified beneficiaries. (*Dickins* v. *N. Y. Cent. R. R. Co.*, 23 N. Y. 158 ; *Yertore* v. *Wiswall*, 16 How. Pr. 8.)

The wrong defined indicates no injury to the estate of the person killed, and cannot either logically or legally be said to affect any property rights of such person, unless it can be maintained that a person has a property right in his own existence. The property right, therefore, created by this statute is one existing in favor of the beneficiaries of a recovery only, and depends for its existence upon the death of the party injured. It had no previous life and cannot be said to have been injured by the very act which creates it. Whatever claim a wife or children have at law upon the husband and father for support perishes with the life of such person, and thereafter their claims upon his estate are governed by statutory rules.

If, therefore, we consider this cause of action as a property right, it is as such, a right based upon a tort, and, except as otherwise provided by the statute creating it, must be governed by the existing rules of law applicable to such causes of action. The case of *Littlewood* v. *Mayor, etc.* (89 N. Y. 24), holding that such causes of action may be settled and discharged by

the injured party during his life-time, would seem to preclude the idea that the husband or widow and next of kin had any right of property in the cause of action created by the death of the party injured during his life-time. The question presented by the decision herein was, we think, determined adversely to the plaintiff by the case of *Cregin* v. *Brooklyn Crosstown R. R. Co.* (75 N. Y. 192). It was there held when an injury is done to the person of the plaintiff (and necessarily, by the terms of the statute, to that of his testator or intestate), "that the pecuniary damage sustained thereby cannot be so separated as to constitute an independent cause of action, for the cause of action is single and consists of the injury to the person. The damages are the consequences merely of that injury, and when, by the terms of the statute, such a cause of action abates, the character of the damages cannot save it." The conclusions reached in that case tend necessarily to support the doctrine that the causes of action given by the act of 1847 and its amendments abate by the death of the person injured. It also holds that, so far as the personal estate and rights of property of the deceased person are injured by the wrongful act causing death, the cause of action therefor survives to his representatives by force of section 1 of the Revised Statutes, before referred to. Such an action exists independently of the statute of 1847, and has been upheld in favor of representatives to the extent of giving damages for medical attendance and inability of the injured party to attend to business, for the time intermediate his injury and death, when the accident occurred while traveling as a passenger upon the defendant's railroad. The action was there based upon the theory of a breach of contract to carry the passenger safely. (*Bradshaw and wife* v. *Lancashire & Yorkshire R'y Co.*, L. R., 10 C. P. 189).

We have carefully considered the case of *Needham* v. *Grand T. R. R. Co.* (38 Vt. 294), but inasmuch as the statutes in that State affecting the question are so different from our own, little analogy exists between the question there presented and the one under consideration. The case of *Yertore* v. *Wiswall*

(*supra*) is entitled to great respect from the learning and ability of the court by which it was decided. But, although agreeing with some of the propositions entertained by it, we are unable to concur in the conclusion reached, that the cause of action there considered, survived.

The complaint in the present action describes a cause of action arising out of the death alone, and suggests no injury to the estate or property of the deceased. Such a cause of action is abated by the death of the wrong-doer.

The judgment of the General Term should, therefore, be reversed, and that of the Special Term affirmed.

All concur; FINCH, J., in result.

Judgment accordingly.